TYLER REFRIGERATION EQUIPMENT COMPANY, APPELLANT, *v.*
STONICK ET AL., APPELLEES.

(No. 10102—Decided September 9, 1981.)

*Mr. Richard Mancini,* for appellant Tyler Refrig. Equip. Co.

*Mr. Frank E. Steel, Jr.,* for appellees George B. and Buena E. Roberts.

*Mr. Benjamin F. Suffron, III,* for appellee Ohio Bar Title Ins. Co.

*Ms. Mary Ann Kovach,* for John A. Donofrio, county treasurer, and James B. McCarthy, clerk of courts.

MAHONEY, P. J. Appellant, Tyler Refrigeration Equipment Company, appeals the judgment of the Summit County Common Pleas Court denying its complaint for foreclosure of its judgment lien on the grounds that a stay of execution by the issuing municipal court deferred its validity until after the expiration of the stay. We reverse.

## Facts

Tyler Refrigeration Equipment Company was awarded a judgment in the Akron Municipal Court against William P. Stonick on April 16, 1979. The judgment provided that execution on the judgment was to be stayed for six months from the date of signing the entry. Tyler immediately thereafter filed a certificate of judgment with the clerk of the court of common pleas. The certificate of judgment, however, made no mention of the stay of execution. The clerk subsequently misindexed the lien, indicating Tyler as the debtor and Stonick as creditor.

At that time Stonick owned real estate in Summit County. On May 1, 1979, he transferred that real estate to George and Buena Roberts. As a result of the clerk's mistaken indexing of the lien, third-party defendant, Ohio Bar Title Company, claims it missed the lien in their search of the title for Roberts.

Tyler then brought suit against Stonick and the Robertses for foreclosure on its lien after the stay of execution expired. The title company, the clerk, and his insurer were made parties to the action by various third-party complaints.

In dismissing Tyler's foreclosure complaint, the court below held that Tyler did not have a valid lien on May 1, 1979, stating that:

"* * * A judgment containing an express stay of execution until a specified date does not become a lien upon the filing of a certificate of judgment, unless said filing takes place after said date."

### Assignment of Error

"The trial court erred in holding that the phrase in the judgment 'execution on the judgment is stayed for 6 months from the date on signing this entry,' prevented plaintiff-appellant from acquiring a valid lien on judgment debtors' real estate as of the date of filing."

Tyler claims that the stay of execution, entered with the consent of the parties, did not affect the validity of its judgment lien because it attached at the time of its filing with the clerk. We agree.

R.C. 2329.02 provides that:

"Any judgment * * * shall be a lien upon lands and tenements of each judgment debtor within any county of this state from the time there is filed in the office of the clerk of the court of common pleas of such county a certificate of such judgment, * * *."

A municipal court has the power to create liens upon land by its judgments and issue stays of execution, as made clear in R.C. 2329.04:

"Judgments of * * * municipal courts, * * * may be made liens upon lands and tenements of a judgment debtor within any county of this state only in the manner provided in section 2329.02 of the Revised Code. * * * If stay of execution of any such judgment is obtained, such facts shall be certified by the clerk of the court rendering the decision * * * to the clerk of the court of common pleas, who shall enter a memorandum of such stay upon the judgment docket. * * *"

It is clear, therefore, that the judgment of the Akron Municipal Court was effective to create a valid lien, and that the court was empowered to stay the execution on such judgment.

The next question is what effect does a stay of execution have on the time of creation of a judgment lien? The lower court held that the filing of a certificate of judgment does not create a lien on the debtor's property during the pendency of the stay. In support of this position, the court cited the case of *Towner* v. *Wells* (1837), 8 Ohio 136, which held that in order for a judgment to be the basis for the creation of a lien, such judgment must be final, conclusive of the controversy between the parties, and one in pursuance of which the creditor may forthwith have execution.

We hold that the lower court's reliance on the above case is misplaced. *Towner* dealt with an attempt by a creditor to obtain a judgment lien pursuant to a non-final, interlocutory order which, by its very nature, could not be enforced. Until the order was finalized, there could be no valid enforcement. The *Towner* court was unwilling to extend greater rights to the creditor through the lien procedure than he had as yet acquired by the judgment itself.

Such a situation is not presented in the present case. Here, there is a final, enforceable judgment, capable of generating a lien. The only effect of the six-month stay of execution was to prohibit execution on the lien, not to prohibit its creation.

The law in Ohio is quite clear that when a certificate of judgment is filed with the office of the clerk of the court of common pleas, a lien is immediately created upon the lands of the judgment debtor. *Maddox* v. *Astro Investments* (1975), 45 Ohio App. 2d 203 [74 O.O.2d 312]. The lien's existence is not predicated upon its execution, and a stay of execution will not postpone the lien's creation, nor destroy one already in existence. See, also, *Marshall* v. *Moore* (1865), 36 Ill. 321; *Hobbs* v. *Simmonds* (1891), 61 Conn. 235, 23 A. 962; *Cook* v. *Martin* (1905), 75 Ark. 40, 87 S.W. 625; and *Decatur Charcoal Chemical Works* v. *Moses* (1889), 89 Ala. 538, 7 So. 637.

The case of *Voorhees* v. *Minor* (1900), 10 C.D. 681, illustrates that only the execution of a lien is affected by a stay of execution. In that case, the stay of execution originated as an agreement between the parties and was thereafter incorporated into the judgment. Paragraph one of the syllabus states:

"An agreement that execution shall not be levied for a certain specified time, is not violated by the institution of proceedings in aid of execution seeking to subject equitable assets and preserve priority of the lien: such a proceeding is not within the meaning of the term 'execution.' "

It is obvious, therefore, that the lien was in existence during the pendency of the stay of execution, enabling the creditor to preserve the lien's priority by means short of execution.

The fact that the certificate of judgment was misindexed by the clerk does not affect the time of attachment nor the validity of Tyler's lien.

"* * * [T]he judgment becomes a lien from the moment that it is delivered and filed with the clerk, regardless of the time when it is docketed and indexed. Where, as here, there is no intention on the part of the legislature in the first paragraph of R.C. 2329.09 to make the docketing and indexing a condition to the existence of a lien, the filing alone is sufficient." (Emphasis deleted.) *Maddox* v. *Astro Investments, supra,* at 207.

### Summary

We express no opinion on the extent of the clerk's, or the title company's, liability, if any, to the Robertses. We hold only that appellant, Tyler Refrigeration Equipment Company, had a valid judgment lien at the time the certificate of judgment was filed, and that such validity was unaffected by the six-month stay of execution and the lien's mistaken indexing. The judgment of the trial court is reversed and this cause is remanded to the trial court for further proceedings according to law.

*Judgment reversed and cause remanded.*

BELL and QUILLIN, JJ., concur.